**IN THE COURT OF APPEALS OF IOWA**

No. 15-1986
Filed January 27, 2016

**IN THE INTEREST OF T.G., T.G., S.G., and M.G.,**
     **Minor Children,**

**C.G., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

A mother appeals from a juvenile court order terminating her parental rights to her four children. **AFFIRMED.**

Michelle M. Jungers of Iowa Legal Aid, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Kathryn S. Miller-Todd and Charles K. Phillips, Assistant Attorneys General, for appellee.

Christina M. Shriver of Coonrad Law Firm, Hudson, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

The mother appeals from a juvenile court order terminating her parental rights to her four children: T.G., born in July 2000; T.G., born in March 2006; S.G., born in April 2008; and M.G., born in May 2011. She contends termination was not in the children's best interests because they are in the care of their maternal aunt and uncle, who are also their foster parents, and the court should have ordered "another planned permanent living arrangement" (APPLA) under Iowa Code section 232.104(2)(d) (2015). Upon our de novo review, we find termination is in the children's best interests and affirm.

## I.       Background Facts and Proceedings

The family came to the attention of the Iowa Department of Human Services (DHS) in February 2014, due to allegations of domestic violence between the parents and allegations the parents were using methamphetamine while caring for the children. A child protection assessment revealed the oldest child had witnessed domestic violence between his parents and also knew his parents were using drugs. Drug paraphernalia, including burnt spoons and needles, were found in the children's rooms. The children, who were then already living with their maternal aunt and uncle, were removed from the parents' care and custody, and placed in relative care with their aunt and uncle.

In March 2014, the State filed a child-in-need-of-assistance (CINA) petition for all four children. In May 2014, the parents stipulated to the children being adjudicated CINA. The juvenile court held dispositional and review hearings in July and August 2014, confirming the CINA adjudication and placement with the

children's maternal aunt and uncle. In December 2014, the aunt and uncle became licensed foster care providers, and the court modified the dispositional order to allow for placement of the children in family foster care instead of relative care. The modification allowed the aunt and uncle to receive a foster care payment for the children.

In March 2015, the juvenile court held a permanency hearing and determined the children should continue to be placed with their aunt and uncle. The father was incarcerated and therefore unavailable to provide care for the children. The mother had been released from jail but had failed to participate consistently in services provided by DHS, including drug testing and attending appointments with mental health providers and child welfare workers. There was a no-contact order in place between the parents due to their history of domestic violence. The court noted the children were anxious about the uncertainty in their lives and the oldest child especially struggled to deal with his parents' failure to make changes that would allow for the children to return to their care. The court found the children appeared to be well-adjusted and were thriving in their aunt and uncle's care. The court concluded it was in the children's best interests to move toward permanency and directed the State to file a petition to terminate the parents' parental rights.

In August 2015, the juvenile court held a combined permanency and termination hearing. Neither parent was present at the termination hearing, though both appeared through their respective attorneys. Although the parents' attorneys contested the termination petition, no witnesses were called to testify

against termination at the hearing. The father was still in prison, having been incarcerated since October 2014. He had an expected release date of 2019. The mother was also unavailable due to criminal activity as she was avoiding an outstanding bench warrant.

At the hearing, all witnesses agreed the children love their mother and are well-bonded to her. However, the Court Appointed Special Advocate (CASA) expressed that everyone had worked toward reunification in the case except for the parents. Both of the DHS social workers and the CASA stated the mother had failed to make any progress in the services offered to her. In fact, the CASA testified she believed the mother was further away from reunification with the children than when the case was opened. For these reasons, the DHS social workers, the CASA, the State, and the guardian ad litem (GAL) all believed termination of the parents' parental rights was in the children's best interests.

The three caseworkers agreed it would be their preference that the maternal aunt and uncle would adopt all four children. However, all also agreed that termination was in the children's best interests even if the aunt and uncle chose not to adopt the children, so long as the children are adopted as a sibling unit. The caseworkers agreed the children should not be separated because a separation could be "extremely traumatic" for the children.

The children's maternal aunt and foster mother provided a post-evidentiary statement in which she stated APPLA was "the best scenario" for them "from a financial standpoint." She discussed their desire to retain daycare reimbursement, child support payments, and respite care, none of which would

be available if the parents' parental rights were terminated. She stated the parents shared a strong bond with their children and the children would always consider their mother and father their parents. Both the aunt and uncle stated that regardless of whether they decided to adopt the children, they intended to keep the children in their home and care for them indefinitely.

The State, the GAL, and the caseworkers all disagreed with the APPLA option, stating it was not the most permanent option for the children and that permanency should be the primary concern for these children.[1] The GAL informed the court of the recent changes to federal law regarding APPLA[2] and stated she believed APPLA was not in the children's best interests. She stated she had completed APPLAs in other cases and had observed that children in APPLAs experienced "no sense of belonging." She believed that if APPLA were ordered in this case, the children would continue to exist in "limbo . . . hoping some day they can return to their mother's home." The caseworkers all acknowledged there would be more financial support available to the aunt and uncle under APPLA but also recognized the family would be eligible for an adoption subsidy.[3]

---

[1] The GAL stated that due to the financial considerations in this case, guardianship was not a viable option.

[2] The U.S. Congress recently modified 42 U.S.C. § 675(5)(C) to restrict the application of APPLAs to children age sixteen and older. Preventing Sex Trafficking and Strengthening Families Act, Pub. L. No. 113-183, sec. 112, § 475(5)(C)(i), 128 Stat. 1919, 1926 (2014). The amendment became effective September 29, 2015, following the termination hearing in this case but prior to the court's written ruling. We note Iowa law has generally followed federal law in this respect, and although it is anticipated the Iowa legislature will make changes to the permanency options available under Iowa Code section 232.104 corresponding to the amended federal law, it is unknown when or how such changes will be made.

[3] One DHS worker testified that if the aunt and uncle were to adopt the children, financial assistance for daycare would no longer be an available option and the parents would no

In its November 2015 order, the court discussed the mother's history of domestic violence with the father, substance abuse problems, criminal activity, and mental health issues. The court also pointed to the mother's lack of transportation, employment, and stable housing for the children, having lost the family home to foreclosure. The court noted as recently as three weeks before the termination hearing, the mother had tested positive for methamphetamine and morphine despite having undergone three substance abuse evaluations, two sessions of inpatient treatment, and one session of outpatient treatment. Further, it found the mother had completely stopped visiting her children two weeks before the hearing. The court noted the various services that had been offered to the family and determined the children could not be returned to their parents' care at the time of the termination hearing. The court considered the aunt and uncle's request for APPLA but concluded termination was in the children's best interests. Pursuant to the Iowa Code, the court terminated the mother's parental rights to her four children under section 232.116(1)(e), (f), and (l).[4] The mother appeals.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not

---

longer be required to pay child support. However, the worker also testified the father had a tentative prison release date of 2019 and the mother was unemployed, and thus, neither would be in a position to fulfill their child support obligation for the foreseeable future anyway.

[4] The court also terminated the father's parental rights to the four children under Iowa Code section 232.116(1)(e), (f), and (l). The father does not appeal.

bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the children. *See id.* at 776.

###   III.   Analysis

On appeal, the mother does not challenge the statutory grounds for termination, and we do not address the issue any further. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Instead, the mother claims termination of her parental rights was not in the children's best interests under Iowa Code section 232.116(2) and the court should have ordered APPLA pursuant to section 232.104(2)(d).[5]

---

[5] Under Iowa Code section 232.117(5), if a court does not order termination, it may enter an order in accordance with section 232.104. Section 232.104 provides in pertinent part:

> 2. After a permanency hearing the court shall do one of the following:
>
> a. Enter an order pursuant to section 232.102 to return the child to the child's home.
>
> b. Enter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.
>
> c. Direct the county attorney or the attorney for the child to institute proceedings to terminate the parent-child relationship.
>
> d. Enter an order, pursuant to findings required by subsection 3, to do one of the following:
>
> (1) Transfer guardianship and custody of the child to a suitable person.
>
> (2) Transfer sole custody of the child from one parent to another parent.
>
> (3) Transfer custody of the child to a suitable person for the purpose of long-term care.
>
> (4) If the department has documented to the court's satisfaction a compelling reason for determining that an order under the other subparagraphs of this paragraph would not be in the child's best interest, order another planned permanent living arrangement for the child.
>
> 3. Prior to entering a permanency order pursuant to subsection 2, paragraph "d", convincing evidence must exist showing that all of the following apply:

Under Iowa law, even if a statutory ground for termination is met, a decision to terminate must still be in the children's best interests. *In re P.L.*, 778 N.W.2d at 37; *see also* Iowa Code § 232.116(2). We do not deprive a child of permanency when the State has proved a ground for termination "by hoping someday a parent will learn to be a parent and be able to provide a stable home." *In re A.M.*, 843 N.W.2d at 113. Termination followed by adoption is the preferred method of establishing permanency for a child who cannot be safely returned home. *In re R.L.*, 541 N.W.2d 900, 903 (Iowa Ct. App. 1995) ("Long-term foster care is not preferred to termination of parental rights."). Whenever possible, siblings should be kept together. *In re L.B.T.*, 318 N.W. 2d 200, 202 (Iowa 1982).

The mother contends her strong bond with the children, and their placement with their maternal aunt and uncle, necessitate an order for APPLA rather than termination. She praises her sister's care of the children and credits the aunt and uncle as the "source of their stability and wellbeing." She claims that due to the financial circumstances of the aunt and uncle, they may not adopt the children and the children will then likely be adopted by strangers and may even be separated from each other. For these reasons, she argues termination is not in the children's best interests.[6]

---

a. A termination of the parent-child relationship would not be in the best interest of the child.
b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
c. The child cannot be returned to the child's home.

[6] The mother also contends the juvenile court erred in determining APPLA was not an available option to the court. We decline to address this issue because we agree with the juvenile court that termination of the mother's parental rights is in the children's best interests.

Where, as here, statutory grounds for termination have been proved to exist, the needs of the child are promoted by termination, and placement of the child with a relative pursuant to a permanency order is not a preferential alternative to termination. *In re L.M.F.*, 490 N.W.2d 66, 67–68 (Iowa Ct. App. 1992). Termination is the appropriate solution when a parent is unable to regain custody within the timeframes of chapter 232. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child."). Furthermore, "the anticipated loss of [financial support] . . . as a result of termination should not be part of the section 232.116(2) best-interests analysis." *In re H.S.*, 805 N.W.2d 737, 746 (Iowa 2011). Instead, when considering a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Both the long-term and immediate interests must be considered. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

The mother has an unfortunate history of domestic violence, substance abuse problems, criminal activity, and mental health issues. She also lacks transportation, employment, and any stable housing for the children. She has failed to make any progress in the services available to her and is further from reunification with her children than when the CINA case began over twenty months ago. Although we recognize the financial concerns of the aunt and

uncle, we cannot deprive these four children, ranging in age from four to fifteen, of the permanency and stability they deserve. *See In re A.B.*, 815 N.W.2d at 777. Thus, upon our de novo review, we conclude termination of the mother's parental rights is in the children's best interests and affirm the juvenile court's order.

**AFFIRMED.**