In the Interest of R.L., C.G., and S.G., Minor Children.

T.G.L., Mother, Appellant,

G.L. and P.L., Grandparents, Intervenors.

No. 95–1015.

Court of Appeals of Iowa.

Oct. 31, 1995.

Esther J. Dean, Muscatine, for appellant.

Thomas J. Miller, Attorney General, Diane Stahle, Special Assistant Attorney General, Judy Sheirbon, Assistant Attorney General, and Dana Christiansen, Assistant County Attorney, for appellee State.

Mark J. Neary, Muscatine Legal Services, Muscatine, guardian ad litem for minor children.

Considered by HAYDEN, P.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

Tracey and Roger are the parents of two daughters, C.G., born February 18, 1986, and, S.G., born August 30, 1988. Tracey is

also the mother of a son, R.L., born July 27, 1984.

In June 1991 the State filed a petition alleging R.L., C.G. and S.G. were children in need of assistance (CINA) pursuant to Iowa Code sections 232.2(6)(b) and (g) (1993). The State subsequently dismissed the petition with respect to C.G. and S.G. In September 1991 the court adjudicated R.L. CINA pursuant to section 232.2(6)(b). However, the court ordered that R.L. remain in Tracey's custody.

In January 1992 the University of Iowa Child Development Clinic (CDC) submitted a report of suspected child abuse to the court and recommended the children be removed from Tracey's care. The CDC's report indicated the children were at imminent risk of denial of critical care and physical abuse due to Tracey's poor parental supervision and "the punitive, emotionally and physically abusive child management practices" in the home. On February 5, 1992, an order removing the children from Tracey's care and placing them in the custody of the Department of Human Services (DHS) was filed.

The State filed a petition alleging C.G. and S.G. were CINA pursuant to Iowa Code sections 232.2(6)(b) and (g) in March 1992. The parties stipulated the girls were CINA pursuant to 232.2(6)(b). Following a consolidated adjudicatory and dispositional hearing, the court concluded the girls should remain in DHS custody for the purpose of placement in family foster care. In April 1992 the court modified its previous dispositional order regarding R.L. and ordered he be placed in DHS custody for placement in family foster care.

Following an October 1992 review hearing, the court granted the children's maternal grandmother's application to intervene and Roger's motion for concurrent jurisdiction in the district court to resolve the parties' dissolution of marriage action. Further, the court continued the children's placements in foster care.

In April 1993 the grandparents filed a motion for placement consideration and for home study. The court denied the motion for a home study but ordered the DHS to arrange weekend visits between the children and the grandparents.

Also in April 1993 the DHS's case permanency plan contained a recommendation that S.G. be placed with Roger under DHS protective supervision. However, S.G.'s extended visitation with Roger ended when Roger's past sexual abuse of a female cousin came to light. It also came to light that Tracey and her mother knew of Roger's past sexual abuse. Eventually, Roger voluntarily terminated his parental rights over the children.

In July 1993 Tracey filed a motion for modification of the dispositional order requesting all three children be returned to her custody or, in the alternative, S.G. be returned to her custody. The court denied the motion. Also in July 1993 the DHS recommended a petition to terminate parental rights be filed. Following a December 1993 dispositional review hearing, the court granted the grandparents' motion for a home study and ordered the State to file a termination petition.

The State filed its petition to terminate parental rights pursuant to sections 232.116(1)(c), (e) and (g). The grandparents and Tracey filed motions to dismiss the termination petition.

Following a hearing, the court ordered Tracey's parental rights should be terminated on May 24, 1995, and filed its findings of facts and conclusions of law on July 10, 1995. The court found grounds for termination had been established pursuant to sections 232.116(1)(c) and (e) and denied the motions to dismiss.

The court explained all three children demonstrated behavioral problems. It noted R.L. is sexually and physically aggressive towards others and has been diagnosed as suffering from attention deficit hyperactivity disorder (ADHD); at the time of trial, his placement was in a psychiatric medical institution for children. The court found C.G. had engaged in improper sexual activity and her characteristics placed her at risk of harm if not closely supervised. The court noted S.G. also suffers from ADHD.

The court found parenting education and individual therapy were services provided to

Tracey after the children were placed in foster care and she regularly attended scheduled sessions, including visitation. The court further found, however, "Tracey has been unable to implement the information provided to enhance the supervision and structure she provides to the children." It found the characteristics identified in a psychological evaluation of Tracey "do not present an encouraging prognosis for meaningful change regardless of the quality and quantity of services" and Tracey's "reasoning capacity is such that she is unable to comprehend the special parenting skills needed for these children."

Tracey appeals.

■ **I.** *Scope of Review.* Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

> We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App. 1988) (citing *Dameron*, 306 N.W.2d at 745).

**II.** *Statutory Criteria.* Tracey first contends termination of her parental rights under Iowa Code sections 232.116(1)(c) and (e) was inappropriate. The district court found the requirements for termination under both sections were met.

■ Iowa Code section 232.116(1)(c) (1993) permits the juvenile court to terminate the parent-child relationship if the court finds all of the following have occurred:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Tracey does not dispute the first requirement was met. She argues, however, the second requirement involving the continued existence of the circumstances which led to the CINA adjudication was not met.

The September 1991 CINA adjudication of R.L. was based upon physical abuse imposed by Tracey. The April 1992 CINA adjudications of C.G. and S.G. were based upon stipulations by the parties. In finding there was support for the stipulation, the district court cited the risk of neglect and undue physical discipline if the children were to remain in Tracey's care.

From 1989 until the 1992 CINA adjudications, the family received family preservation services on two occasions and family therapy services on a regular basis. Following the CINA adjudications, Tracey received individual parenting skill sessions with Kim Andeway–Kain of Lutheran Social Services. These sessions included topics such as alternative discipline techniques, dealing with ADHD behaviors, and nutrition. Ms. Andeway–Kain also supervised Tracey's weekly visitations. Tracey also received individual counseling on a weekly basis from Patricia Langley of Lutheran Social Services. This counseling dealt with personal issues such as Tracey's failed marriage and domestic violence. The counseling also addressed the need to develop a trusting relationship with

the children and how to put the children's need to be safe first.

In a quarterly report submitted by Lutheran Social Services in February 1995, concerns regarding Tracey's ability to effectively parent remained present. Tracey continued to have difficulty managing the behaviors of the children. She was unable to identify manipulative behavior and she continued to reinforce regressive and inappropriate behavior through lack of recognition and/or consequences. It was the opinion of Lutheran Social Services that Tracey still did not understand the impact abuse has had on the children. Tracey was unable to understand the children's need for stability and security. Lack of nutritionally well-balanced meals on a consistent basis continued to be a concern. We find, despite the services provided, the same problems continued to exist which necessitated the CINA adjudications. Accordingly, we affirm the termination of parental rights under section 232.116(1)(c).

Tracey further contends termination under Section 232.116(1)(e) was improper. Iowa Code section 232.116(1)(e) permits the juvenile court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Under this section, the only dispute is whether the final requirement of section 232.116(1)(e) was met. Tracey does not contest the first three requirements.

■ The requirement of Iowa Code section 232.116(1)(e)(4) is met "when the child cannot be returned to the parental home because the definitional grounds of a child in need of assistance, Iowa Code section 232.2(6), exist." *In re A.M.S.,* 419 N.W.2d 723, 725 (Iowa 1988). If any one of the grounds listed in section 232.2(6) can be proven by clear and convincing evidence, there is a sufficient basis for the termination. *In re M.W.,* 458 N.W.2d 847, 850 (Iowa 1990).

As was previously discussed, the conditions which led to the CINA adjudications continued to exist at the time of the terminations. Accordingly, we find the children could not be returned to Tracey and termination of her parental rights under section 232.116(1)(e) was proper.

**III. *Motion to Dismiss.*** Tracey contends the district court erred in denying the motion to dismiss the termination petition filed by the maternal grandparents and joined by Tracey.[1] The district court concluded even if the grandparents were suitable custodians, the termination of parental rights is preferable to a long-term foster care situation.

■ Long-term foster care is not preferred to termination of parental rights. *In re J.P.,* 499 N.W.2d 334, 337 (Iowa App. 1993); *In re L.M.F.,* 490 N.W.2d 66, 68 (Iowa App.1992). Furthermore, this was not a situation where the children were in the care of a relative at the time of the termination proceedings. *See* Iowa Code § 232.116(3) (1993).

A child should not be forced to endlessly suffer the parentless limbo of foster care. *In re D.J.R.,* 454 N.W.2d 838, 845 (Iowa 1990); *Long v. Long,* 255 N.W.2d 140, 146 (Iowa 1977). "[W]e cannot gamble with the children's future. They must not be made to await their mother's maturity." *In re D.W.,* 385 N.W.2d 570, 578 (Iowa 1986) (quoting *In re Kester,* 228 N.W.2d 107, 110–11 (Iowa 1975)).

---

1. The motion was filed by the maternal grandparents, as intervenors, and later joined by Tracey. The basis of the motion was termination would be premature due to the availability of the grandparents as a placement option. The grandparents did not appeal the district court's ruling on the motion.

The record reveals, in this case, the best interests of the children require termination of parental rights rather than long-term foster care. The children had already been forced to endure three years of foster care at the time of the termination proceedings. We affirm the district court's ruling overruling the motion to dismiss.

**IV.** *Reasonable Efforts to Reunify.* Tracey contends the district court erred in determining reasonable efforts had been made to maintain family unity. As was previously discussed, Tracey was provided with services through Lutheran Social Services. We find the services provided were ample, appropriate, and reasonable. Tracey's claim she did not receive reasonable services is without merit.

Tracey also contends the least restrictive alternative was not exercised since custody was not given to the maternal grandparents. As was previously discussed, termination of parental rights is preferable to long-term foster care. *J.P.*, 499 N.W.2d at 337; *L.M.F.*, 490 N.W.2d at 68. We find no error in terminating the parental rights rather than placing the children in long-term foster care.

**V.** *Motion to Strike.* We have before us the notice filed by Tracey's parents, as intervenors, stating their concurrence with Tracey on her appeal. In addition, we have the State's motion to strike the intervenors' notice of position and joinder. We pass the procedural question of whether Tracey's parents can now intervene due to their failure to file a notice of appeal. In doing so, we give due and proper consideration to the support they have advanced for their daughter, the mother-appellant.

We have considered all arguments raised by the parties on appeal, along with the position motion of the intervenors, and find no error by the district court. Accordingly, we affirm the termination of parental rights.

**AFFIRMED.**