# IN THE COURT OF APPEALS OF IOWA

No. 15-0646
Filed October 28, 2015

**IN THE INTEREST OF D.R.,**
**Minor Child,**

**D.R., Father,**
       Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachel Seymour, District Associate Judge.

A father appeals from the order terminating his parental rights. **AFFIRMED.**

Jane M. White of Jane M. White Law Office, Des Moines, for appellant father.

Alexandra Nelissen of Nelissen Law Firm, P.C., Des Moines, for mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Amanda Johnson, Assistant County Attorney, for appellee State.

Jessica Millage of Millage Law Firm, Des Moines, for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

The father appeals the termination of his parental rights contending, among other things, that his due process rights were violated by the failure of the juvenile court to appoint him a guardian ad litem in the underlying child-in-need-of-assistance proceedings and the court erred in not allowing him an additional six months to seek reunification. We are not persuaded by the father's contentions and affirm the termination of his parental rights.

**I. Background Facts and Proceedings.**

The child, born in May 2006, came to the attention of the department of human services (DHS) in September 2012 when the mother attempted suicide and admitted using methamphetamine. The child and three half-siblings were removed from the mother's care.[1] D.R. and two siblings were placed in the care of their maternal grandmother; one sibling was placed with a paternal grandmother.

At the removal hearing, the mother informed the juvenile court that D.R.'s father was a federal inmate at a correctional facility in California. Notice of the child-in-need-of-assistance (CINA) proceedings was mailed to the father on October 5, 2012. Notice included the removal order, the CINA petition, an order setting hearing, an order appointing attorney and guardian ad litem (GAL) for the child, an order appointing an attorney from mother, an affidavit in support of placement with maternal grandmother, the application for temporary removal, an Indian Child Welfare Act affidavit, and an application for court-appointed counsel

---

[1] The parental rights of the mother as to this child and her siblings, as well as the parental rights of the fathers of the siblings were terminated by consent in a previous order. Their rights are not issue in this appeal.

for the father to complete and return to the court. The father did complete and return the financial affidavit to obtain an attorney; however, the juvenile court later observed that document was not brought to the attention of the juvenile court. The father also included a letter, which stated, "I do understand what is going on and if my Baby is at peace with her grandmother she is with and if [grandmother] would keep her safe and way from drama I would like for her to take care of my Baby until I can get out . . . ."

The child was adjudicated to be a CINA on November 1, 2012, pursuant to Iowa Code sections 232.2(6)(b), (c)(2) and (n) (2011). The court found the mother had admitted to using illegal substances while caring for the children. Further, D.R. tested positive for opiates, without a legal prescription, and a sibling tested positive for methamphetamine.

On January 30, 2013, an uncontested dispositional hearing was held. The court found the mother needed to continue to address her substance abuse issues, confirmed prior orders regarding custody of the children, and ordered services continue to be provided to the mother.

The juvenile court granted a June 7, 2013 motion to modify custody, which returned the children to mother's custody, based on her compliance with services. That placement was confirmed during a July 2013 review hearing upon the court's finding that the mother had completed recommended drug treatment, provided clean drug screens, and attended domestic violence classes.

Unfortunately, the children were again removed from the mother in January 2014 upon the children's GAL's motion and the court's findings that the mother was not complying with court ordered services. All of the children's

behaviors had significantly deteriorated since their return to the mother's custody. The children were placed in the custody of DHS for the purposes of foster care as the prior custodians indicated they were unable to make a permanent commitment to the children if that became necessary.

On July 17, 2014, a permanency hearing commenced with numerous exhibits admitted. The maternal grandmother had filed a motion to intervene to request placement D.R. The motion to intervene was not resisted by any party present and was subsequently granted. The DHS worker had recommended a termination petition be filed. The mother and the fathers of D.R.'s siblings resisted that recommendation. The mother had been arrested on felony drug charges in April 2014 and remained in jail since that time. On agreement of the parties present, the permanency hearing was continued and would coincide with the termination hearing.

A termination petition was filed on July 17, 2014, and a hearing was scheduled for September 16 and 17, 2014. D.R.'s father was appointed counsel at this time. At the September 2014 hearing, it was determined notice had still not been served on the father of D.R. as he had been transferred to a different federal correctional facility. The juvenile court continued the termination proceeding as to this father. The termination trial as to the other parents went forward however.

On November 30, 2014, the court entered an order terminating the mother's parental rights based on her consent. The maternal grandmother had requested placement of D.R. only, which was resisted by DHS, the State, the child's attorney, and the GAL. The court found the grandmother could not care

for all the children; D.R. remained placed with a younger sibling and a modification would require separating those two siblings, which was not recommended by their therapists. The juvenile court confirmed placement of D.R. in foster care.

The termination hearing as to the father of D.R. was rescheduled and held on October 21, 2014, and January 20, 2015. The father testified by telephone both days of the hearing. He had been serving a sentence for a conviction of being a felon in possession of a firearm since December 2008. For the first four years of his sentence he was placed at a correctional facility in California. He was then transferred to North Carolina for eleven months, and then to a correctional facility in Illinois, where he had been for two months and would remain until his discharge. The father has prior convictions for possession with intent to distribute crack cocaine and reckless discharge of a firearm causing injury. He had served about three years in a correctional facility in Iowa on conviction for reckless discharge of a firearm.

The father stated the last time he had physical contact with D.R. was in November 2008. However, he stated he was in contact with the child while the child was in the care of the maternal grandmother and during the time that the mother had custody of the children (June 2013 to January 2014). He testified he would write the child and talk to her on the telephone. The mother told the father when the children were removed from her care again.

The father stated that he had gotten notice of the CINA proceedings. When asked if he attempted to contact DHS after getting notice, he testified, "No.

ma'am. Because at the time I felt like my family . . . was in good hands with [maternal grandmother]. I told her whatever she needed me to do, I would do it."

In early 2014, the father asked his sister and his fiancé to contact DHS. The father's sister was the only family identified by the father to DHS. When the father received the termination paperwork in July 2014, he asked his sister to go to Des Moines and let people know there was family for D.R. The father believed that he would be released on January 30, 2015, to a halfway house in Minnesota where he could remain until July 28, 2015. He stated he would be completely off of supervision in 2018. He proposed D.R. be placed with his sister in Minnesota until his eventual release. D.R. had not seen the father's sister since she was about three years old, an approximate period of five years.

On the second day of the termination hearing in January 2015, the father testified that he had not had any contact with D.R. since her placement in family foster care. However, he had contacted his family about the placement. The father had learned since the last hearing that the home study for his sister had been denied. He stated he wanted additional time to "get [him]self together" so that he could care for his daughter. The father acknowledged he was able in the course of this case to identify relatives that could be a potential placement for his daughter and he had identified his sister, but her home study was denied.

The DHS worker testified that the father had not contacted her since he had received court-appointed counsel. However, his sister did contact the DHS worker in the summer of 2014 to discuss placement of D.R. The DHS worker did not send the father any updates or information, and she did not talk with him on the telephone. The father had not requested any information. He did not advise

the DHS worker when he changed institutions. The DHS worker did not facilitate any contact between the father and child. The father did not ask for any assistance in making such contact. The DHS worker was aware the mother and the maternal grandmother were facilitating contact with the father and both of these women knew how to contact the DHS worker.

The DHS worker also testified that D.R. had been informed of the placement option with her paternal aunt and had become emotionally upset. The child indicated she did not want to be placed with her. The child was also scared of her father, and she only wanted to be placed with her siblings. She was very happy in her current home. The DHS worker believed it would be in the child's best interests for permanency to be established.

On March 31, 2015, the juvenile court terminated the father's parental rights, finding clear and convincing evidence to support termination pursuant to Iowa Code section 232.116(1)(b), (d), (e), and (f) (2013).[2] The court also

_____

[2] The relevant code provisions allow the juvenile court to terminate parental rights if:
> (b) The court finds that there is clear and convincing evidence that the child has been abandoned or deserted.
>      . . . .
> (d) The court finds that both of the following have occurred:
>      (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
>      (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.
> (e) The court finds that all of the following have occurred:
>      (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>      (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.

determined termination of the father's parental rights was in the child's best interests, stating:

> The child's safety is a primary consideration. This child cannot be returned to [the father's] home now or any time in the near future. [The child] has a limited relationship with him that includes her being fearful of him. The child's primary concern is maintaining her relationship with her younger sibling. [The father's] own actions have prevented him from being in a role to parent this child. He has not demonstrated any ability to maintain a safe and sober lifestyle outside the confines of a correctional facility. This child has already waited too long for a parent to step up and function in that role and should not be made to wait any longer while Father creates a relationship with her. This child needs a long-term commitment from a parent to be appropriately nurturing, supportive of their growth and development, and who can meet her physical, mental, emotional and safety needs *today,* not six months from now. [The father] cannot do that today and cannot guarantee that any time in the foreseeable future. Since termination and adoption are the preferred methods of obtaining permanency for a child who cannot be returned to a parental home, the court finds termination is in the child's best interest. *In re R.L.*, 541 N.W.2d 900, 903 (Iowa Ct. App. 1995). Further, the court finds there are no longer any legal exceptions in Iowa Code section 232.116(3) which would argue against termination.

## II. Scope and Standard of Review.

We conduct a de novo review of termination of parental rights proceedings. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). Although we are not

---

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. . . .
(f) The court finds that all of the following have occurred:
(1) The child is four years of age or older.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

bound by the juvenile court's findings of fact, we do give them weight, especially in assessing the credibility of witnesses. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is considered "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *See id.*

**III. Analysis.**

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The court must initially determine whether a ground for termination under section 232.116(1) is established. *Id.* If a ground for termination is established, the court must next apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. *Id.* If the statutory best-interest framework supports termination of parental rights, the court must finally consider if any statutory exceptions or factors set out in section 232.116(3) weigh against termination of parental rights. *Id.*

The father does not contest the grounds for termination. Rather, he argues the failure to appoint him a GAL during the CINA proceedings violated his due process rights, and that had he been appointed a GAL, the outcome of those proceedings might have been different. He also asks us to rule that the juvenile court's taking of judicial notice of files in the underlying CINA proceedings violated his due process rights. The father asserts the juvenile court erred in denying his request for an additional six months to access services. He asks us

to reverse the CINA adjudication and termination. Under the circumstances presented in this case, we will not do so.

In *In re T.C.*, 492 N.W.2d 425, 429 (Iowa 1992),—a case with facts analogous to those before us—our supreme court held the failure to appoint a GAL during CINA proceedings did not void the subsequent termination. The court stated,

> Even if Iowa Rule of Civil Procedure [1.211] applied,[3] however, we do not believe that a failure to appoint a guardian ad litem for J.C. in the CINA proceeding voids the legal effect of the termination proceeding. At the CINA proceeding, W.C., the children's mother, and her attorney stipulated that the children were in need of assistance. J.C. was obviously not able to provide the help that the children then needed. Had he been present, it is completely unlikely that the court would have entered any order different from what it did. Moreover, the element of the children having been adjudicated in need of assistance had to be proved at the termination proceeding. J.C. was present with counsel at that proceeding and had the opportunity to litigate any errors of fact giving rise to the children being deemed in need of assistance.

*T.C.*, 492 N.W.2d at 429. Here too, the mother did not contest the children were CINA and the father "was obviously not able to provide the help that the child[] then needed." *See id.* As was the case in *T.C.*, had the father been present by GAL or counsel in the CINA proceedings, it is unlikely the juvenile court would

---

[3] Iowa Rule of Civil Procedure 1.211 provides:

> No judgment without a defense shall be entered against a party then . . . confined in a penitentiary, reformatory or any state hospital for the mentally ill, or one adjudged incompetent, or whose physician certifies to the court that the party appears to be mentally incapable of conducting a defense. Such defense shall be by guardian ad litem[.]

The State argues the father's claim of a violation of rule 1.211 was not properly preserved below because it was not raised until closing arguments in the termination hearing. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised [at the earliest opportunity] in the trial court applies to CINA and termination of parental rights cases."). As in *T.C.*, we find that even if the rule is at play, we find no violation of the father's due process rights. 492 N.W.2d at 429.

have entered any order different than it did; in fact, the father was satisfied with the child's placement with the maternal grandmother. The father does not assert the child was not a CINA. We conclude that even if the matter were adequately preserved, the father's due process rights were not violated here by the failure to appoint the father a GAL during the CINA proceedings.

The father's claim on appeal—that his due process rights were violated by the juvenile court's "taking judicial notice of prior Child in Need of Assistance legal and exhibit files" "since he was not present to dispute the factual documentation contained in those files"—is not properly before us because this objection was not made to the juvenile court.[4] *See A.B.*, 815 N.W.2d at 773. Similarly, the father's complaint of lack of notice to relatives under Iowa Code section 232.84 was not made below and is not properly before us. *See id.*

There is clear and convincing evidence that the child is four years or older, has been adjudicated a CINA, has been removed from the parent's custody for the requisite statutory period, and could not be returned to the incarcerated father at the time of the termination hearing in October 2014 or January 2015. Thus, clear and convincing evidence supports termination of the father's parental rights pursuant to section 232.116(1)(f).

In order to continue placement for an additional six months as requested, Iowa Code section 232.104(2)(b) requires the juvenile court to make a determination the need for removal will no longer exist at the end of the

---

[4] The father objected to the court taking judicial notice of the siblings' CINA and termination files "without having those files here properly identified and marked and being submitted to the Court since they are not underlying files related to this child but are files related to siblings."

extension.  Even if the father were willing and able, he had not seen the child for five years or more.  The juvenile court did not err in rejecting the father's request for an extension of time here.  We affirm the termination of the father's parental rights.

**AFFIRMED.**