# IN THE COURT OF APPEALS OF IOWA

No. 17-0077
Filed March 22, 2017

**IN THE INTEREST OF V.B., D.B., and M.E.-B.,**
**Minor Children,**

**B.B., Mother,**
      Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Deborah Farmer Minot, District Associate Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Joseph C. Pavelich of Spies, Pavelich & Foley, Iowa City, for appellant mother.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Anthony A. Haughton of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem, and Lynn M. Rose, Iowa City, attorney, for appellees minor children.

Considered by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**DANILSON, Chief Judge.**

A mother appeals[1] from the order terminating her parental rights to three children pursuant to Iowa Code section 232.116(1)(f) (2016).[2] V.B. was born in March 2002; D.B. in June 2004, and M. E.-B. in April 2007. This family has been under the juvenile court's jurisdiction since 2011—for more than five years. The children were adjudicated children in need of assistance (CINA) on May 30, 2012. The children have been removed from the mother's care and custody since May 20, 2014. The permanency goal was changed from reunification to "another planned, permanent living arrangement" (APPLA) in July 2015, which ruling was affirmed on appeal. *See In re E.B.*, No. 15-1384, 2015 WL 5970443 (Iowa Ct. App. Oct. 14, 2015).[3] In the July 2015 permanency order, the juvenile court concluded termination of parental rights was not in the children's best interests *at that time*. This court concurred: "Considering E.B.'s and V.B.'s age, the children's familial identity, their continued bond with [the mother] (with perhaps the exception of D.B.), and with each other, we agree termination was not in the children's best interests at the time of the permanency hearing." *Id.* at *6.

In September 2016, the State filed petitions to terminate parental rights. After a December hearing, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f).[4] The court found that

---

[1] The father of M. E.-B. filed an untimely appeal, which was dismissed by supreme court order on February 9, 2017. The fathers of V.B. and D.B. do not appeal.

[2] E.B., an older sibling, turned eighteen prior to the termination proceedings.

[3] Other appeals are noted and discussed in this prior opinion and we do not repeat that history now.

[4] Section 232.116(1)(f) allows the juvenile court to terminate parental rights if a child is four years old or older, has been adjudicated a CINA, has been out of the parent's

termination of parental rights was in the children's best interests because the children "desperately need permanency and stability," the children were all expressing an interest in being adopted, and while the mother and children had a bond, the children need permanency.

On appeal, the mother contends there have not been "[a]dditional 'reasonable efforts'" made as a result of the permanency goal changing to APPLA for all the children, insisting the State was required to continue services and encourage more visitation to maintain the parent-child bond. She also asserts termination was not in the children's best interests, and the parent-child bonds weigh against termination.

We review termination proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's findings of fact, especially in assessing the credibility of witnesses, but are not bound by them. *Id.*

We first note that after the entry of the July 2015 ruling changing the permanency goal to APPLA for all the children, Iowa Code section 232.104(2)(d)(4), which authorizes APPLA as an available option, was amended to apply only "[i]f the child is sixteen years of age or older." 2016 Iowa Acts ch. 1063, § 16.

The mother's claim that reasonable efforts have not been made was addressed by the juvenile court:

> Since that [July 2015 permanency] ruling, neither DHS nor the court has been legally required to provide services and

---

custody for at least the last twelve consecutive months, and cannot be returned to the parent's care at present. The mother does not claim these grounds do not exist.

supervisions designed to assist the parents with regaining custody of the children. Although the court found in July 2015 that termination was not in the best interests of the children for several reasons, it specifically directed DHS to commence concurrent planning and investigate whether the children would become amenable to adoption. Noting the remarkable progress made by the children as contact with their parents diminished, the court expressed the hope that adoption would become an option for some or all of the children. The court directed DHS to amend the case permanency plan "with identified goals of increased skill development for the children, more focus on the children's individual needs, and strengthening the sibling bond."

It is also important to note that over the past seventeen months, neither parent requested that the children be returned to their custody, objected to reports and recommendations, or requested additional services.

(Footnotes omitted.)

Nonetheless, DHS authorized continued visits between the mother and children in consultation with the children's attorney, guardian ad litem, and therapists. "Because of the overwhelming evidence that more frequent contact with their mother had been detrimental," the mother was authorized to visit with each child twice per month starting August 2015. She cancelled eighteen visits and attended forty visits. We cannot agree with the mother there have not been reasonable efforts made.

The mother does not contest the juvenile court's findings that termination is authorized under section 232.116(1)(f). *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) ("If a ground [for termination under section 232.116(1)] exists, the court may terminate a parent's parental rights."). She asserts, however, termination is not in the children's best interests. When considering a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to

the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The mother testified, "Of course, I'd love to have the kids come home. But umm, you know, I would be perfectly happy with just, you know, not terminating, but continuing visits and phone calls. That would—you know, that would be, like, the best outcome possible."

Upon our independent review of the lengthy record, we agree with the juvenile court's assessment aptly summarized here:

> The court finds that the children cannot be returned to the custody of either parent today without continuing to be at imminent risk of adjudicatory harm and removal. The State has proven its case by clear and convincing evidence under section 232.116(1)(f). Neither [the mother] nor [the father], separately or together, has the material, financial or emotional resources necessary to parent these children. They have failed to address the many and complex issues that led to the removal of the children. The most intensive and extensive services imaginable were offered for more than three years to achieve the goal of reunification, without success. The goal of reunification was abandoned in July 2015 and nothing significant has changed since. [The mother has], particularly over the past year, failed to take advantage and follow through with visitation, resulting in decreased contact with the children and increased parent-child detachment. The children continue to display the ability to respond to appropriate and nurturing parenting such that they can be successful in their homes, schools and communities. They have given up on the possibility of reunification and show an interest, willingness, and/or eagerness to be adopted and live in a "normal" family. The court continues to be amazed, awed, proud, and deeply moved by these children.
>
> The parents ask for "more time," but there is no more time. . . . [The children] have been waiting all their lives for parents who can care for them the way all children deserve. They desperately need permanency and stability. There is no hope that [the mother] . . . can meet these needs. It has become painfully clear that permanency cannot be achieved through the goal of another planned, permanent living arrangement. Even if the law allowed that goal for children aged [fourteen], [twelve,] and nine, the court finds that it would be cruel to pretend that the foster care system offers real permanency.

Termination followed by adoption is the preferred method of establishing permanency for a child who cannot be safely returned home. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"); *In re R.L.*, 541 N.W.2d 900, 903 (Iowa Ct. App. 1995) ("Long-term foster care is not preferred to termination of parental rights."). The children want to be adopted. The children's guardian ad litem recommends termination of parental rights. We conclude termination of the mother's parental rights is in the children's best interests.

Finally, the mother seeks to avoid termination of her parental rights on grounds she shares a bond with her children. But termination of parental rights is a legal proceeding to assure the safety and best interests of the children, and although family strings are untied, the circumstances need not be akin to most divorces where the bond between individuals has entirely dissipated. In fact, termination of parental rights may be ordered notwithstanding the existence of a lingering bond of some degree. Iowa Code section 232.116(3)(c) provides a "permissive, not mandatory" factor[5] weighing against termination—if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We acknowledge the bond between mother and children.

Here, the children's attorney filed a detailed report in the CINA cases on November 2, 2016, indicating that all three children have stated the wish to be adopted. And we agree with the juvenile court that terminating the parent-child

---

[5] *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted).

relationship will be less detrimental to the children than maintaining the continued limbo they have experienced for years or trying to salvage the parent-child relationship.  We therefore affirm.

**AFFIRMED.**