# IN THE COURT OF APPEALS OF IOWA

No. 20-0933
Filed September 23, 2020

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**R.J., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Jeremy Feitelson of Feitelson Law, L.L.C., West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Karl Wolle of the Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., Mullins, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**CARR, Senior Judge.**

A father appeals the termination of his parental rights to his child. He contends termination goes against the child's best interests. We review his claim de novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

The father has a long history of juvenile court involvement that extends almost twenty years. The father was first involved in two child-in-need-of-assistance (CINA) proceedings involving two older children in 2001 and 2003. His parental rights to those children were terminated in 2005 due to unresolved issues with substance use and physical abuse. The child at issue in this appeal was born in 2010 and first came to the juvenile court's attention in 2013. There were concerns about the father's substance use, and though he admitted a history of methamphetamine use, the father claimed he stopped using it several years earlier. The child was again the subject of CINA proceedings in 2013, which ended when the mother's parental rights were terminated in 2015.

The most recent CINA proceedings began in July 2018, when the Iowa Department of Human Services (DHS) received a report that the father was using methamphetamine while caring for the child. The father denied using methamphetamine but tested positive for it. The father attributed the positive result to using a vape pen that he claimed a family member used to smoke methamphetamine and failed to clean afterward. When interviewed, that family member admitted to using methamphetamine with the father while the child was in the home. The juvenile court found the family member's explanation more credible based on details he provided and more plausible based on other objective evidence of the father's drug use. The court noted that the father's demeanor at

the CINA hearing "was aggressive and disrespectful," which "was similar to his behaviors at the beginning of the prior [CINA] case." The juvenile court adjudicated the child to be a CINA and expressed concern that the father's demeanor, his refusal to obtain a new substance-abuse evaluation, and his denial of substance use would impede his progress.

Despite the juvenile court's prediction, things seemed to be going well in the fifteen months that followed the CINA adjudication. The father participated in therapy and tested negative for substance use. By June 2019, the State moved to return the child to the father's custody, which all parties supported and the juvenile court granted. At the August 2019 disposition review, the court found that the CINA proceedings were moving toward successful closure.

But in January 2020, a DHS worker "identified several red flags" that suggested the father had relapsed: (1) the father stopped attending therapy for a long time, (2) the father failed to follow through with services for the child, (3) the child reported that the father resumed a relationship with a girlfriend who had a history of substance use, (4) the father failed to provide drug screens on the day requested, and (5) the father failed to make his home or the child available for scheduled appointments with the DHS. The State moved to modify the dispositional order to place the child outside the home, which the juvenile court granted until it could further review the matter.

At the modification hearing, the court again observed that the father appeared "agitated and argumentative." The court continued the matter to allow the father to provide a drug screen and make the child available to the DHS during a home visit. The results of the drug screen showed a high level of

methamphetamine, but the father again denied any drug use.  He also denied contact with the girlfriend, claiming the child lied.  In its February 2020 disposition review order, the juvenile court found the father's continued denial about his substance use "creates a clear barrier for this child to be safely returned," noting his "pattern of not taking responsibility for his actions and blaming others, including his child and DHS for the current circumstances."  The court continued the child's placement out of the home.

In April 2020, the State petitioned to terminate the father's parental rights under Iowa Code section 232.116(1)(d), (e), (g), and (l) (2020).  At the termination hearing, the father testified he used methamphetamine for three or four months when he was twenty-eight years old but stopped and never used again.  The juvenile court found that this testimony contradicted the information the father provided in prior substance-abuse evaluations and concluded that the father continued to use.  The juvenile court terminated the father's parental rights under section 232.116(1)(d) and (g).  On appeal, the father does not dispute that the State proved the grounds for termination, only contests the finding that termination is in the child's best interests.

If a ground for termination exists, the court must decide whether to terminate parental rights by "giv[ing] primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  "[T]he legislature 'has significantly, and not too subtly, identified a child's safety and . . . need for a permanent home as the defining elements in a

child's best interests.'" *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Both defining elements of the best-interest determination are at issue. The juvenile court removed the child from the home because of concerns the father used methamphetamine while caring for the child. Despite the father's denials, the juvenile court found the more credible evidence showed the father continues to use methamphetamine. We give weight to these findings. *See A.S.*, 906 N.W.2d at 472. The father's substance use presents a clear danger to the child's safety. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting that "an unresolved, severe, and chronic drug addiction can render a parent unfit"). Thus the element of safety supports termination. *See id.* ("No parent should leave his small children in the care of a meth addict—the hazards are too great." (citation omitted)).

On the element of permanency, the father does not challenge the juvenile court's determination "that an additional period of rehabilitation would not correct the situation." *See* Iowa Code § 232.116(1)(g)(4). The father's failure to admit his ongoing methamphetamine use and to seek treatment makes it impossible for a parent-child reunion to occur. The past twenty years have shown that the father is unwilling or unable to change even when confronted with the possibility of losing his children. *See In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (stating that in determining a child's best interests, the court may gain insight into what the future likely holds for the child if returned to the parent's care from evidence of the parent's past performance because "that performance may be indicative of the quality of the future care that parent is capable of providing" (citation omitted)). If we preserve the father's parental rights, the best the child can hope for is to remain

in a placement outside the home[1] for another eight years, which "is not preferred to termination of parental rights." *In re R.L.*, 541 N.W.2d 900, 903 (Iowa Ct. App. 1995).

The child is ten years old and has been the subject of CINA and termination proceedings on and off for the past seven years. Two years after the child's removal, the father is no closer to having her returned to his care. Delaying termination any longer would go against the child's best interests. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (citation omitted)); *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that "patience on behalf of the parent can quickly translate into intolerable hardship for the child[]"); *see also R.L.*, 541 N.W.2d at 904 (finding termination was in the best interests of the children rather than long-term foster care where the children had "already been forced to endure three years of foster care at the time of the termination proceedings").

We affirm the termination of the father's parental rights.

**AFFIRMED.**

---

[1] We note that although the child is in the care of a relative, the decision to terminate "is not to be countermanded by the ability and willingness of a family relative to take the child." *A.S.*, 906 N.W.2d at 475 (citation omitted). The family member is willing to adopt the child, which would provide the permanency the child needs.