# IN THE COURT OF APPEALS OF IOWA

No. 22-1455
Filed November 17, 2022

**IN THE INTEREST OF D.S.,**
**Minor Child,**

**M.S., Father,**
     Appellant,

**D.S., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam Sauer, District Associate Judge.

A father appeals the termination of his parental rights to his child.
**AFFIRMED.**

Cameron M. Sprecher of Sprecher Law Office, P.L.C., Mason City, for appellant father.

Barbara Jo Westphal, Belmond, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Becky Wilson of O'Mara Wilson Law, P.L.L.C., Mason City, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A father appeals the termination of his parental rights to his child. He asks for more time and contends the juvenile court erred by finding the State proved the grounds for termination. He also contends termination is not in the child's best interests and would harm the child based on the close bond they share.

We review termination proceedings de novo. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). After doing so, we conclude more time would not change the outcome of the proceedings, the statutory requirements for termination have been met, and termination is in the child's best interests. We therefore affirm.

**I. Background Facts and Proceedings.**

The child was born in 2018. Because of the mother's methamphetamine use and concerns about domestic violence between the parents, the child was removed from the home and placed in the custody of the Iowa Department of Health and Human Services (DHHS) in July 2021. The juvenile court adjudicated the child in need of assistance (CINA) in September.

The DHHS first placed the child in the father's care[1] with the understanding that the father would not supervise the mother's visits with the child or allow the mother to live in the home. But in the days after the CINA adjudication, the DHHS learned of ongoing contact between the mother and the father, and attempts to contact each parent went unanswered. Concerned for the child's safety, the DHHS decided to remove the child from the father's care and place the child with a foster family. A worker arrived at the father's home for removal and discovered the father

---

[1] Although the child was placed in the father's care for a short time, the DHHS maintained custody throughout.

left the child with the maternal grandmother, who has a history of substance use. The worker reported that when the child was returned, the grandmother showed "physical indicators of possible substance use."

The father made no progress toward reunification. The juvenile court gave a succinct summary of the father's limited engagement with services:

> Since November 2021, [the father] has only met with the [DHHS] when his attorney could also be present. [The father] is not currently participating in Family Centered Services. [The father] completed four anger management classes and reported that he did not need to attend more classes. [The father] no showed for paternity testing on November 3 and December 8, 2021, and May 20, 2022. [The father] has not had an interaction with the child since the beginning of [2022] and has provided no reasonable explanation for not seeing the child in approximately seven months. [The father] has made no attempts, whether in-person, over the phone, or video, to have contact with the child.

As a result, the juvenile court found clear and convincing evidence supported terminating the father's parental rights under Iowa Code section 232.116(1)(e) and (h) (2022). The father appeals.[2]

**II. Extending Time.**

The father first asks for more time to reunify with the child. Iowa Code section 232.104(2)(b) allows the court to continue the child's placement for six months if doing so will eliminate the need for the child's removal. But before the court can grant more time, it must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that

---

[2] The court also terminated the mother's parental rights. The mother's attorney appealed at the mother's behest, but the supreme court dismissed the appeal when the mother failed to sign the notice of appeal.

the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The father argues for more time, claiming he "made significant progress" by finding employment and trying to maintain housing. He admits he did not participate in services because he distrusted the DHHS and disagreed with its determination that he was not a suitable placement for the child. But concerns about the father's ability to care for the child arose when he violated the safety plan. And the father's claim that "[t]here is no rule of law that states a parent must comply with services offered by the [DHHS] in order to regain custody" ignores that the juvenile court ordered his participation.[3]

Nothing in the record suggests custody can be returned to the father with more time. The progress claimed by the father is in areas that were not a concern when the case began. He made no progress with the concerns that led to the DHHS to remove the child from his care: allowing the mother and maternal grandmother contact with the child and failing to address concerns about domestic violence in his relationship with the mother.[4] To add to those concerns, the father had not seen the child in the seven months before termination. On this record, we conclude that delaying termination will not bring a better result. *See In re B.H.A.*,

---

[3] The juvenile courts orders include recommendations made by the DHHS. For example, the adjudicatory order prohibits the mother from interacting with the child "without prior approval of the [DHHS] and with the presence of a person approved by the [DHHS] to provide supervision." It also requires the father to complete anger management therapy; arrange for paternity testing; keep all testing appointments, and cooperate with all testing procedures; and "attend all sessions, actively participate in, and demonstrate progress with, all services ordered herein."

[4] The child made statements to the foster family revealing she witnessed that violence.

938 N.W.2d 227, 233 (Iowa 2020) (looking at a parent's past performance as evidence of the future).  We deny the father's request for more time.

### III. Statutory Grounds for Termination.

We next address the grounds for termination.  We need only find sufficient evidence supporting one of the grounds cited by the juvenile court to affirm.  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  The father challenges the evidence supporting termination under section 232.116(1)(h), arguing the State failed to show the child cannot be returned to his custody as provided in section 232.102.  *See* Iowa Code § 232.116(1)(h)(4).[5]  He does not challenge termination under section 232.116(1)(e) (allowing termination when "clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so").  "Where a party has failed to present any substantive analysis or argument on an issue, the issue has been waived."  *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa 2013).

Even so, sufficient evidence supports termination on either ground.  Because the father had no contact with the child during the seven months before termination and has made little to no effort to resume care of the child, we may

---

[5]  The father cites to section 232.116(1)(f), which is nearly identical to section 232.116(1)(h) but differs on the child's age and how long the child has been removed from the parent's custody.  Because the juvenile court terminated the father's rights under section 232.116(1)(h) rather than (f), we presume the error is typographical and the father intended to cite section 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.").

terminate his parental rights under section 232.116(1)(e) (allowing termination when "the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so"). Because evidence also shows the child cannot be returned to the father's care for the reasons stated in section I, we may terminate his parental rights under section 232.116(1)(h).

### IV. Best Interests.

The father next contends termination is not in the child's best interests. To determine the child's best interests, we use the framework described in section 232.116(2). S*ee In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010). That provision requires that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" of the best-interests analysis are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

The father's best-interests argument hinges on his belief that the child was never in danger while in his care. The record refutes his claim for the reasons stated in section I about his violation of the safety plan and the court's orders. The father failed to provide for the child's safety. Given the father's refusal to engage in services, there is no basis to find that will soon change.

Section 232.116(1)(e) and (h) allow the court to terminate parental rights after six months. Once that statutory period passes, we view termination

proceedings with a sense of urgency. *In re C.B.*, 611 N.W.2d 489, 494–95 (Iowa 2000). "[W]e cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted).

One year passed between the CINA adjudication and termination. The child remained with the same foster family and integrated into the home. The juvenile court found she is "thriving" there. But long-term placement in foster care is not preferred to termination of parental rights. *In re R.L.*, 541 N.W.2d 900, 903 (Iowa Ct. App. 1995). The DHHS and guardian ad litem agreed that the child's best interests are served by terminating parental rights to allow the child to be adopted. We agree.

**V. Parent-Child Bond.**

Finally, the father argues against termination of his parental rights based on the closeness of the parent-child relationship. Under Iowa Code section 232.116(3)(c), the juvenile court "need not terminate the relationship between the parent and the child if . . . termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." But the court need not save the parent-child relationship based on section 232.116(3)(c). *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). The court has discretion in doing so based on the facts of the case. *See id.*

We agree with the juvenile court that there is no evidence termination would harm the child:

Any sadness the child may experience because of termination does not overcome the likely long-term hardship and neglect the child will suffer if in the care of parents. The Court simply cannot find that the parent-child relationship is so strong that it outweighs the need for termination. Despite any fondness or love between the parents and the child, it is not in the child's best interest to wait any longer for permanency.

Because the child's best interests are served by terminating the father's parental rights, we affirm.

**AFFIRMED.**