# IN THE COURT OF APPEALS OF IOWA

No. 22-1665
Filed December 21, 2022

**IN THE INTEREST OF R.E. and R.E.,**
**Minor Children,**

**P.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Nina Forcier of Forcier Law Office, P.L.L.C., Waterloo, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

A mother who abandoned her two children, born in 2007 and 2010, to the care of their maternal grandmother several years ago appeals the termination of her parental rights under Iowa Code section 232.116(1)(e) and (f) (2022).[1] In a scattershot approach on appeal, the mother's real argument seems to be that her rights should not have been terminated because the children's adoption is uncertain. Following our de novo review,[2] we affirm.

## I.      Background Facts and Proceedings

Because of their mother's struggles with substance abuse and mental health, these two children were mostly raised by their maternal grandmother. The mother left the children with the grandmother in 2011, popping in and out of their lives in the years that followed. The youngest child does not remember the mother, and the oldest child says that she has not seen her mother since she was eight years old.

The children were formally placed in their grandmother's guardianship by a district court order in March 2018, with supervised visitation for the mother. The grandmother was diagnosed with cancer in 2016. By the spring of 2020, her physical and mental health had declined to a point where she was no longer able to provide safe care for the children. The grandmother agreed to transfer the guardianship to the children's aunt and began transitioning them into her care in May. But then the grandmother had a change of heart and started threatening to

---

[1] The father's rights were also terminated. He does not appeal.

[2] In conducting our de novo review, we "give weight to the [juvenile court's] factual findings but are not bound by them." *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). Our paramount concern is the children's best interests. *Id.*

take the children back. As a result, the Iowa Department of Human Services obtained an order for temporary removal from the grandmother's care in July and filed child-in-need-of-assistance petitions. In its later order confirming the removal, the court denied the mother's request to have the children placed with her because of her absence from the children's lives. The grandmother passed away in December, and the mother missed the funeral because the family could not find her. The children remained living with their aunt.

By late January 2021, the department had offered the mother services aimed at reunifying the children with her, but she declined to participate. Her whereabouts were unknown to the department and her family, who reported her missing. The mother didn't resurface until October, when she was arrested for second-degree burglary. While in jail, the mother reached out to the department but did not start any services or have visits with the children. She became unreachable again in January 2022 after she was released from jail. Once more, no one knew where she was. As a result, the juvenile court directed the State to initiate termination proceedings.

Shortly before the State filed its termination petitions in May, the mother was arrested on a warrant and convicted of third-degree burglary. She received a suspended sentence but was ordered to reside in a residential correctional facility. The mother had no contact with the department until a few days before the termination hearing in July, when she reported that she wanted the children returned to her care. She made this request even though it had been years since she had seen the children, let alone cared for them.

At the termination hearing, the mother acknowledged the children could not be placed with her at the facility, where she would be living for "up to a year." Although permanency had been deferred once already,[3] the mother requested more time "to be able to have the children return to her care" or establishment of a guardianship over the children "in each of the homes in which they reside." In the months before the hearing, the older child was moved to a foster home and the younger child to a different aunt's home. Both homes were committed to caring for the children long-term, though the foster home was not an adoptive placement, and the aunt was still weighing adoption at the time of the hearing. In its ruling, the juvenile court denied the mother's requests and terminated her parental rights.

## II.    Analysis

The mother starts with a challenge to the first step of our three-part analysis, claiming the State did not prove the grounds for termination by clear and convincing evidence. *See L.B.*, 970 N.W.2d at 313 (considering whether (1) a statutory ground for termination is satisfied, (2) the children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination); *see also* Iowa Code § 232.116(1)–(3). But she doesn't pinpoint a deficiency as to any element of either ground the juvenile court relied on—Iowa Code section 232.116(1)(e) and (f). In fact, the mother agrees that she "was not having regular contact with the children" and cannot care for them due to "her unavailability." While that would be enough to affirm under both

---

[3] Permanency was deferred to allow the children's aunt time to explore the services that would be available to help care for the children, who have significant mental-health and behavioral issues, if they were placed in her care permanently.

grounds, we find the record beyond those concessions clearly and convincingly shows the mother has "not maintained significant and meaningful contact with the child[ren] during the previous six consecutive months and ha[s] not made reasonable efforts to resume care of the children despite being given the opportunity to do so," and the children cannot be returned to her custody at present. Iowa Code § 232.116(1)(e)(3), (f)(4).

Within the mother's purported challenge to the grounds for termination, she argues that termination is not in the children's best interests because their current placements are not willing to adopt, which would make them "parentless." It's true that the permanency question was not resolved as to either child at the time of the termination hearing.[4] But whatever the future holds for these children, it will be better than the "parentless limbo" they have already been in for many years while the mother's rights have remained intact despite her ongoing shirking of parental duties. *See In re R.L.*, 541 N.W.2d 900, 903 (Iowa Ct. App. 1995).

And in the end, when determining whether termination is in the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). For many years, the mother has done nothing to ensure the children's safety, foster their nurturing and growth, or tend to their needs. We find termination is in the children's best interests, as it would

---

[4] To the extent that the mother relies on additional developments relevant to this question following the termination hearing or the court's entry of the termination order, we do not consider those matters on appeal. *See Jensen v. Baccam*, No. 18-1848, 2020 WL 2060296, at *2 (Iowa Ct. App. Apr. 29, 2020).

provide them with at least a chance at permanency and stability, which they have yet to experience.

The mother next requests application of the permissive exception to termination in section 232.116(3)(c), arguing termination would be detrimental to the children because of the closeness of the parent-child bonds. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting application of a statutory exception to termination, if one exists, is "permissive, not mandatory" (citation omitted)). But that argument ignores reality. It has been years since the children have seen their mother. Unlike the younger child, the older child remembers the mother, but she is understandably frustrated with her for abandoning them. As the children's guardian ad litem said at the end of the termination hearing:

> [The older child] did want the court to know that . . . she wishes she could have a relationship with her mom. She wishes her mom would call her and contact her and be a mother to her, but she has not and she's very tearful and upset because she can't go through this again . . . and she wants her mother's rights to be terminated.

Because there was no evidence that termination would be detrimental to the children, we conclude this exception does not apply. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (placing the burden to establish an exception on the parent resisting termination).

Since termination is in the children's best interests, we reject the mother's passing argument "that the best thing available for the children would have been to establish a guardianship." *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("Before ordering permanency through a guardianship, the court must find termination is not in the child[ren]'s best interests."); *see also* Iowa Code § 232.104(2)(d)(1), (4)(a). A guardianship, rather

than termination, would not promote stability or provide these children with their chance at permanency discussed above. *See R.S.R.*, 2011 WL 441680, at *4 ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody."). And it is "not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted).

As for the mother's suggestion that she be granted an extension to work toward reunification, additional time is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Given the mother's track record, we have no basis to make such a finding. The mother has never been a parent to these children, and that is unlikely to change in six months. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct."). Furthermore, the mother may still be under a requirement to reside at the residential correctional facility—where the children cannot live—when six months expires. *Cf. In re L.S.*, No. 21-2000, 2022 WL 2826024, at *1 (Iowa Ct. App. July 20, 2022) ("We don't even know if he will be out of jail or prison by then. So we have no basis to conclude an extension of time is warranted."). We accordingly deny the mother's request for an extension.

**AFFIRMED.**