# IN THE COURT OF APPEALS OF IOWA

No. 17-0603
Filed June 21, 2017

**IN THE INTEREST OF J.J.,**
**Minor Child,**

**C.J., Mother,**
    Appellant,

**B.J., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Wapello County, William S. Owens, Associate Juvenile Judge.

A mother and a father separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Mary Baird Krafka of Krafka Law Office, Ottumwa, for appellant mother.

Bret R. Larson of Orsborn, Milani, Mitchell & Goedken, L.L.P., Ottumwa, for appellant father.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Special Assistant Attorney General, for appellee State.

Sarah L. Wenke of Wenke Law Office, Ottumwa, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

A mother and a father separately appeal the termination of their parental rights to their child. They argue they were denied procedural due process and challenge the State's proof of the requirements for termination. Because the parents were afforded due process and the State proved each of the prerequisites for termination, we affirm.

**I. Background Facts and Proceedings.**

The family came to the attention of the Iowa Department of Human Services (DHS) in December 2015 due to concerns that the mother and the father were using methamphetamine in the home while caring for the child. Both the mother and the father have a long history of methamphetamine use and tested positive for amphetamine and methamphetamine during the child protective assessment. The child was placed in the home of a maternal family member and the parents agreed to participate in substance-abuse treatment. Although the mother and the father were initially allowed to remain in the home with the child, the DHS asked them to leave the home in January 2016 due to concerns about their continued methamphetamine use. The parents never resumed care of the child.

In February 2016, the juvenile court adjudicated the child to be a child in need of assistance (CINA). The DHS provided the mother and the father services to address their substance abuse, but neither completed the recommended treatment. The mother and the father also failed to obtain mental-health treatment, employment, or stable housing during the CINA proceedings, and in January 2017, they were living with a registered sex offender.

In February 2017, the State filed a petition to terminate the mother's and the father's parental rights. At the termination hearing the following month, the father admitted, "There's no excuse whatsoever why we're not being parents that we're supposed to be being at our age, at all." Although he had recently obtained a substance-abuse evaluation and claimed he was prepared to follow through with treatment, he had only just begun the process. The father asked the court to continue termination for six more months so he could undergo shoulder surgery and get a job, but he also testified that "the shoulder surgery is going to knock me out of work for like six months straight" and that six months was "the bare minimum" of time he would need for recovery, which he claimed was typically a year.

The mother testified at the termination hearing that she had never successfully completed a substance-abuse-treatment program. She left a residential treatment program after one night because of anxiety and quit outpatient treatment after approximately two weeks because she was not comfortable talking in front of people. Tellingly, the mother testified she does not think she needs substance-abuse treatment. Although she has a number of mental-health diagnoses that are treated with prescription medication, she testified that she stopped taking her medication when she was sixteen because she did not think it was helpful, and she was not taking any medication at the time of the termination hearing. When asked about her employment plans, the mother testified she planned to "[s]tart finding a job," admitting that she had not yet obtained one because she had "not doing everything that . . . [she] could to find one." For instance, the mother had an interest in working at Goodwill but

never applied. She, too, asked the court to extend the time for permanency to allow her to prove she could obtain stable housing, employment, and mental-health and substance-abuse treatment.

The juvenile court entered an order terminating both the mother's and the father's parental rights to the child pursuant to Iowa Code section 232.116(1)(h) (2017). The court noted that the parents "clearly adore" the child but

> have done virtually nothing over the last thirteen months to put themselves in a position to have [the child] returned to them. They have not completed substance-abuse treatment ([the mother] needs to update her evaluation before she can even begin treatment), neither is engaging in recommended mental-health treatment, neither has stable housing, nor are they employed.

The court further found "there is simply no evidence presented to show terminating parents' parental rights would be detrimental to the child" and "no indication that additional time, more services, or any different services would provide a different result either now, or in the foreseeable future."

Both parents appeal.

**II. Scope and Standard of Review.**

We review orders terminating parental rights de novo. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Although we give weight to the juvenile court's fact findings, we are not bound by them. *See id.* We will uphold termination if clear and convincing evidence supports the grounds for termination under section 232.116. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence exists if there are no "serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence." *See id.* (citation omitted).

### III. Procedural Due Process Challenge.

The mother and the father both claim they were denied procedural due process because the State failed to properly serve notice of the termination petition. *See In re K.M.*, 653 N.W.2d 602, 607 (Iowa 2002) (stating parties to termination proceedings are entitled to notice and a meaningful opportunity to be heard). Specifically, they argue the initial proofs of service show service by the assistant county attorney in violation of Iowa Rule of Civil Procedure 1.302(4), which provides that original notices may be served "by any person who is neither a party nor the attorney for a party to the action."

The record made at the termination hearing shows the service provider served the parents with notice of the petition and the assistant county attorney only signed the proofs of service. The assistant county attorney later filed amended proofs to correct this error. Because the record shows the parents received adequate notice of the termination proceeding, we decline to further address their arguments on the matter.

### IV. Termination of Parental Rights.

Both parents challenge the sufficiency of the State's proof of the various prerequisites for terminating their parental rights. In determining whether to terminate parental rights, the court follows the following three-step analysis:

> First, the court must determine if a ground for termination under section 232.116(1) has been established. If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

*D.W.*, 791 N.W.2d at 706-07 (internal citations omitted).

### A. Grounds for termination.

In order to terminate parental rights under section 232.116(1)(h), the State must prove the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

There is no dispute the first three elements have been proved.

The father argues the juvenile court erred in terminating his parental rights because he has cooperated with court-ordered services. However, the State is not required to show a parent is uncooperative to establish the grounds for termination under section 232.116(1)(h). The only ground for debate is on the fourth element of section 232.116(1)(h): whether the child could be returned to the father's custody at the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707 (stating the showing the children cannot be returned to the parent "at the present time" means "at the time of the termination hearing").

Under the facts before us, the father was unable to resume care of the child safely at the time of the termination hearing. The father failed to complete the recommended substance-abuse treatment, which prevented him from addressing his mental health. He remained unemployed and without safe and stable housing.

The father requests that he be granted an additional six months to prove himself, claiming the barriers that prevented him from completing substance-abuse treatment—such as an active arrest warrant and his incarceration—were "largely resolved" by the time of the termination hearing.[1] We note that time "is a critical element" in termination proceedings, and after the statutory time period for termination has passed, termination is viewed with a sense of urgency. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Children are not equipped with pause buttons. *See In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."); *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems."). Before the court can grant a parent additional time, there must be an assurance that the need for removal will no longer exist at the end of that time period. *See* Iowa Code § 232.104(2)(b). Considering the father's lack of progress during the year-long CINA proceedings and his late commitment to resuming parenting duties, we are unconvinced that this would be the case here. *See C.B.*, 611 N.W.2d at 495 ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)); *see also In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived

---

[1] These impediments are of the father's own making and show the circumstances that led to the CINA adjudication continued to exist at the time of the termination hearing.

permanency on the hope that someday the parent will be able to provide a stable home). The father also remains in a relationship with the mother, a substance abuser who also has failed to obtain treatment. On this record, his prognosis for lasting sobriety is poor.

The father also claims the DHS failed to provide reasonable efforts to prevent termination, as required by Iowa Code section 232.102(7) (requiring the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child").[2] *See C.B.*, 611 N.W.2d at 493. The reasonable-efforts requirement is not a strict substantive requirement for termination. *See id.* Instead, the services provided by the DHS to reunify parent and child after removal impact the State's burden of proving it would be unsafe to return the child to the parent's care. *See id.* For the reasons stated, the State has proved the father cannot parent the child safely.

### B. Best interests.

Having found the State proved the grounds for termination under section 232.116(1)(h), we must then consider whether termination is in the child's best interests. Both parents contest the State's proof on this issue.

In determining the child's best interests, we give primary consideration to the child's safety, to the best placement to further the child's long-term nurturing

---

[2] It is the parent's obligation to demand different or additional services the parent may require *prior* to the termination hearing. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). No such requests were made here. If a parent does not request additional services at the appropriate time, the argument that the DHS did not make reasonable efforts is waived and cannot be challenged in the termination proceeding. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).

and growth, and to the child's physical, mental, and emotional conditions and needs. *See A.M.*, 843 N.W.2d at 112. The "defining elements in a child's best interest" are the child's safety and "need for a permanent home." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially). Although preservation of the parent-child bond may suit the parents' best interests, it would not be of benefit to the child. The parents have been unable to provide the child with a safe and stable home. Although the DHS offered them services to reunite them with the child, they each failed to step up and assume their parental duties for more than a year. Meanwhile, a relative has provided the child with the permanency, safety, and stability the parents have not. This relative wishes to adopt the child, providing the child with an ongoing safe and stable home. The permanency this affords is greater than the loss suffered by terminating the parent-child bond. *See In re R.L.*, 541 N.W.2d 900, 904 (Iowa Ct. App. 1995) ("[T]ermination of parental rights is preferable to long-term foster care."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time period for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children").

### C. Statutory exceptions.

Finally, the parents seek to avoid termination under one of the exceptions provided in section 232.116(3) based on the child's placement with a relative and given their bond with the child. *See* Iowa Code § 232.116(3)(a), (c). The factors weighing against termination in section 232.116(3) are permissive, not mandatory. *See In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). "The

court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

As stated above, the child's best interests require terminating the parents' rights, and we decline to invoke section 232.116(3) to avoid termination. And, for the same reasons, we agree with the juvenile court that placing the child in a guardianship pursuant to section 232.104(2)(d)(1) would not be appropriate. Accordingly, we affirm.

**AFFIRMED ON BOTH APPEALS.**